```
 1            IN THE UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF MICHIGAN

 3  UNITED STATES OF AMERICA,        )
                                     ) Case No. 22-20187
 4      vs.                          )
                                     ) Bay City, Michigan
 5  GREGORY MARTIN HAYES,            )
                                     ) March  28, 2022
 6      Defendant.                   )
    _____) 1:03 p.m.

 7

 8            TRANSCRIPT OF DETENTION HEARING
         BEFORE THE HONORABLE PATRICIA T. MORRIS
 9             UNITED STATES MAGISTRATE JUDGE

10  APPEARANCES:

11  For the Government:  TIMOTHY M. TURKELSON
                        United States Attorney
12                      Eastern District of Michigan
                        101 First Street
13                      Suite 200
                        Bay City, MI 48708
14
    For the Defendant:  STEVENS J. JACOBS
15                      Jacobs Law Office, P.C.
                        45 N Tuscola Road
16                      Bay City, MI  48708
                        (989) 892-8611
17

18

19

20  Recorded by:        Kristen Castaneda

21  Transcribed by:     Carol M. Harrison, RMR, FCRR
                        1000 Washington Avenue
22                      Bay City, MI  48708

23

24       TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
          TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25
```

```
 1                    P R O C E E D I N G S
 2            (At 1:03 p.m., proceedings commenced.)
 3            (Defendant present.)
 4            THE CLERK:  The Court calls the case of the United
 5   States of America versus Gregory Hayes, Case No. 22-30150.
 6            THE COURT:  Good afternoon.  Could I have the
 7   attorney appearances, please.
 8            MR. TURKELSON:  Good afternoon, Your Honor.  May it
 9   please the Court, Tim Turkelson on behalf of the United States,
10   and present to my right is William Vailliencourt from the US
11   Attorney's Office, as well.
12            THE COURT:  Very well.  Thank you.
13            MR. JACOBS:  Steve Jacobs on behalf of Gregory Hayes
14   who's also present, Your Honor.
15            THE COURT:  Thank you, Mr. Jacobs.  And thank you,
16   Mr. Hayes.
17            THE DEFENDANT:  Thank you.
18            THE COURT:  We're here today for purposes of a
19   detention hearing, and I assume the parties' positions are the
20   same?  Government still seeking?
21            MR. TURKELSON:  Government is seeking detention, Your
22   Honor?
23            THE COURT:  And defense still arguing for relief?
24            MR. JACOBS:  That's correct.
25            THE COURT:  All right.  Very well.  And everyone has
```

1  the benefit of the Pretrial Services report?

2          MR. JACOBS:  Yes, ma'am.

3          THE COURT:  Okay.  Great.  This is a case that

4  carries a presumption in favor of detention.  I think we all

5  agree on that, and then I'll take arguments that -- however

6  they want to do it.

7          Mr. Turkelson, if you'd like to go first, go right

8  ahead.

9          MR. TURKELSON:  Certainly, Your Honor.  And the Court

10  is correct.  This is a presumption case and we are seeking

11  detention.  We don't believe that there are any conditions of

12  bond that would ensure both Mr. -- the public's safety and

13  Mr. Hayes' return to court.

14          Your Honor, this has been an ongoing investigation.

15  It began approximately a year ago.  It involves a significant

16  number of search warrants that have been executed and also an

17  extended period of a T-III wire interception That's been going

18  on now for several months.

19          During the course of the investigation, it's become

20  apparent that Ricardo Delgado and Gregory Hayes are partners in

21  a significant drug trafficking organization that is responsible

22  for the distribution of kilograms of cocaine and some heroin

23  throughout the Saginaw region.

24          Investigation has shown that Delgado has their direct

25  line with co-conspirators in Mexico whom he works with to

1 obtain the controlled substances on a regular basis,

2 approximately every two weeks or so, Your Honor.  It appears

3 that Delgado and Hayes are working together to bring in more

4 than 25 kilograms of cocaine every two weeks for distribution.

5 As I indicated, there is some heroin, but primarily it's been

6 cocaine.

7          Delgado and Hayes each have their own people whom

8 they work with to distribute the controlled substances, and the

9 investigation revealed that Delgado relies heavily on Austin

10 Saucedo, Jonathan Coronado and Aristeo Delgado to assist in

11 distributing drugs.

12          Delgado's been overheard commenting to having

13 shooters working for him, and that he wanted to get more

14 shooters as well.  The investigation also revealed that Delgado

15 would rarely distribute his controlled substances in amounts

16 less than a kilogram.  On a few occasions, he would break a

17 kilo in half, but that was few and far between.

18          As of March 22nd, 2022, agents were continuing to

19 monitor the cellular telephone lines related to Delgado when

20 agents became aware of the fact that Jonathan Coronado had

21 attempted to sell a kilo of cocaine on behalf of Delgado, and

22 in the process he was robbed of those drugs.

23          After informing Delgado of the robbery, Delgado told

24 Coronado that he needed to shoot them.  During the intercepted

25 phone calls, Delgado was further overheard telling Coronado

1  that he needed to have one in the chamber and he needed to have

2  at least two loaded magazines, and hopefully he could, quote,

3  dump both magazines.

4          Delgado was overheard telling Hayes about the robbery

5  and telling Hayes that he told Coronado that he needed to go

6  lay them down, which agents interpreted as obviously trying to

7  kill them.

8          Based on these obvious threats, agents immediately

9  notified uniformed officers in the City of Saginaw to respond

10 to the area of the suspected shooting.  Agents also respond to

11 the area as well.  Delgado was overheard providing directions

12 to Coronado about where to go, and based on these directions,

13 law enforcement was directed and able to figure out where they

14 were going.

15         Delgado was then overheard expressing surprise at the

16 number of police cars in the area as they got to the area where

17 the shooting, we suspect, was going to occur.  Austin Saucedo

18 was also involved in the attempted shooting as what appears to

19 have been a lookout on behalf of Coronado.

20         Both Delgado and Saucedo were stopped by officers in

21 the area where the shooting was to take place.  Officers did

22 not let on at that time that they knew of the potential

23 shooting, and both were allowed to leave because we weren't

24 sure of how we're going to progress with the wire at that

25 point.  Coronado was not picked up at that point, however.

1       As Delgado drove away, he was overheard talking to
2  Hayes and stating, "These things are dirty.  Don't talk on
3  them.  We need to meet up."  Officers did not, however, as I
4  indicated, locate Coronado at the time, and because Coronado
5  was not located, investigators were concerned that the shooting
6  would still occur.  For that reason, it was decided to arrest
7  Delgado, Hayes, Saucedo, Coronado, and A. Delgado as soon as
8  they could be located.
9       This wasn't the first time that Delgado had been
10 ripped off.  I believe it was in February.  It was at least
11 earlier on, Your Honor, that Hayes had a vehicle with a hidden
12 trap in it that contained 15 kilograms of cocaine.  Someone
13 stole the car and tore the trap apart to access the drugs.
14      Delgado believed he knew who the -- who stole the
15 drugs from him, and he discussed with Hayes getting retribution
16 against that person but ultimately decided the suspect was
17 related to a source -- his source in Mexico, and he would not
18 be given the green light to enact revenge.
19      I think it's important to consider that many of the
20 vehicles involved in this case, Your Honor, they talk on the
21 phone about the traps that these vehicles have that will allow
22 them to hide controlled substances and money.  During the
23 course -- and I'll get to this, but during the execution of
24 search warrants, we also observed that in some of the homes as
25 well.

1          Shortly after the attempted shooting, officers were

2   able to locate Delgado, Austin Saucedo and A. Delgado at a gas

3   station off of 75 in Saginaw.  Hayes was located at a Lowe's

4   store, and Coronado was eventually located at Delgado's house

5   while he was possessing the gun.

6          Agents were also able to obtain six search warrants

7   that were executed in the late hours of March 22nd and the

8   early hours of March 23rd.  At Delgado's residence, agents

9   located 3.5 kilograms of cocaine -- I'm sorry, 13.5 kilograms

10  of cocaine; that those kilograms of cocaine were hidden in a

11  cutout in a motor vehicle, essentially a trap area of a motor

12  vehicle.

13         Agents also located in excess of $200,000 in cash and

14  13 guns.  The cash, or the majority of cash, was located in

15  Delgado's house in a step that, I believe, went up into the

16  kitchen area, and it was -- they had a magnet that was an

17  electric magnet that you could push a button to allow access to

18  the -- you lift the stair up to allow access to the money and

19  the guns that were contained therein.

20         At two houses associated with Hayes, agents loaded --

21  located two kilograms of cocaine and approximately $25,000 in

22  cash and a firearm.  As this Court is aware -- and if I can go

23  back, Judge --

24         THE COURT:  Of course.

25         MR. TURKELSON:  -- Mr. Vailliencourt pointed out to

1   me, also at Delgado's house, in addition to the money and drugs

2   were 13 firearms, suppressors and also automatic sears or -- or

3   triggers to allow the weapons to be fired in an automatic way.

4           Like I said, at Hayes' house they located two

5   kilograms of cocaine, approximately $25,000 of cash and a

6   short-barreled rifle and a handgun.

7           Mr. Hayes clearly is a distributor of kilograms of

8   cocaine.  I think the telephone calls clearly show that, and as

9   evidence of that, he did, in fact, possess or was found in one

10  of his residents two kilograms of cocaine and, as I said, the

11  $25,000 in cash.  I think that's significant.  I had a brief

12  chance to look at his -- the Pretrial Services report, which

13  indicates an income of about $2,000 a month -- I thought that's

14  what it said -- which would be $24,000 a year, and he's got

15  25,000 in cash sitting in his residence.

16          Also, there have been conversations overheard in

17  which Hayes has discussed possessing firearms.  In fact, he had

18  misplaced a firearm on at least an occasion, and throughout the

19  course of the investigation, he has discussed possession -- but

20  possessing firearms.

21          He has a 1996 conviction for possession of less than

22  25 grams of narcotics.  He also has a 1997 misdemeanor

23  conviction for fleeing a police officer, along with the 2000

24  conviction for fleeing -- a felony conviction for fleeing a

25  police officer and resisting a police officer.

1          In a 2002 conviction for delivery manufacture of 50
2     to 450 grams of narcotics -- I think this is significant, Your
3     Honor, because that makes him -- he went to prison on that, and
4     that will make him potentially eligible for an 851 enhancement.
5     If the Government does seek to file an 851 enhancement against
6     him, he would potentially be eligible for a mandatory minimum
7     of 15 years instead of 10 years.  I haven't run the numbers to
8     see exactly when he was released from prison on that particular
9     case, Your Honor, but I think he's potentially eligible for
10    that.
11         He does also have a 2015 conviction for being a felon
12    in possession of a firearm; a 2018 conviction for drunk
13    driving, third offense; and a 2018 attempt resisting an
14    officer.
15         Judge, I think that this defendant poses a
16    significant risk to the community by clear and convincing
17    evidence.  As the Court's already indicated, this is a
18    presumption case.  The Court has always noted some of the Court
19    of Appeals cases that talk about the fact that distribution of
20    controlled substances, in itself, is a dangerous situation for
21    the community.
22         In this case, we've got kilograms of cocaine and some
23    heroin that this defendant, in conjunction with Mr. Delgado,
24    are primarily responsible for it.  They are the tip of the
25    spear when it comes to this drug trafficking organization.

1  There aren't anyone higher than Mr. Hayes and Mr. Delgado.

2  Mr. Delgado's contact goes directly to Mexico.

3          And they're -- Mr. Hayes and Mr. Delgado are

4  overheard consistently talking about obtaining the drugs,

5  obtaining money to pay for the drugs, and then distributing the

6  drugs.  They're continually overheard on these phone calls

7  talking about weapons and things of that nature as well.

8          And it's evident that Mr. Delgado informs Mr. Hayes

9  of the robberies that took place on those two separate

10 occasions and what his reaction was going to be.  The one

11 reaction was to, quote, lay him down, go shoot the place up,

12 and the other reaction was when his vehicle with the trap had

13 been -- been robbed, his reaction was to talk about the fact

14 that they wanted to enact retribution but just couldn't get the

15 green light because of who they suspected did it had ties to

16 his sources.

17          I think it's also significant, Your Honor, that the

18 amount of time that this defendant faces, I think, naturally

19 makes him a risk of flight because he does face so much time,

20 and he clearly has resources when we find $25,000 in cash at

21 one of his residences, and that cash is well beyond his means

22 when one looks at the job that he claims to have and the income

23 he claims to have.

24          With the number of traps that we have found in the

25 houses and the vehicles in this particular case, I'm not

1   confident, as we sit here today -- although I can't prove it,

2   but I'm not confident that we necessarily got all the guns and

3   drugs that Mr. Hayes and/or Mr. Delgado have access to, and I

4   think that under those circumstances, this Court can infer that

5   he is a risk of flight as well by probable cause.

6          And so I'm asking the Court to order him detained

7   based on the fact that by clear and convincing evidence he's a

8   risk to the community, and then also based on the fact that

9   he's a risk of flight.  Thank you.

10         THE COURT:  Thank you, Mr. Turkelson.

11         Go ahead, Mr. Jacobs.

12         MR. JACOBS:  Thank you, Your Honor.

13         Your Honor, my client is 46 years old, married,

14  father. His children are all adults now. One graduated from

15  Michigan State, another works in Houston.  His daughter is

16  working in a store in Saginaw, a grocery store.  His wife has

17  worked at Nexteer for 20-plus years.  She's agreed to be a

18  third-party custodian.

19         My client is a lifelong resident of Saginaw and he's

20  got ties to the community.  He has a friend here who brought

21  his passport and the passport would be surrendered if the Court

22  agreed to a release.

23         He -- unusual, he's been working.  He's worked the

24  last four years as a car salesman.  He got a total of eight

25  years experience as a car salesman.

1          Yes, we have some mental health problems.  He was
2  going to Hosanna Lifeskills Center.  They had recently referred
3  him to the State Street facility.  He was going to Hosanna
4  every two weeks.  He agreed to a drug test, and for whatever
5  reason, Pretrial Services declined to give him one.  We assert
6  he would have successfully completed that.

7          He successfully completed probation in '94.  He went
8  to prison in 2002, and he successfully completed parole.  When
9  he -- at age 38, when he had the weapons charge, he
10  successfully completed that.  He's got, we assert, no known
11  history of failing to appear and that he's not a serious risk
12  of flight and not a serious danger to the community.

13          The criminal complaint asserts two kilos of cocaine
14  and 25,000 were seized from my client's residence or a place
15  affiliated with him.  No reference to any guns, and the gun
16  allegation today is quite a surprise to us.

17          Again, the client has always appeared.  There's no
18  history of nonappearance.  Yes, there's a presumption here.
19  When we talk about shooters and guns, I heard Delgado,
20  Coronado, Austin Saucedo, all talking about attempted shooting.
21  We didn't hear about Hayes -- anybody ordering Hayes or Hayes
22  shooting anyone?

23          At Delgado's residence they found this cocaine and 13
24  guns and money.  At my client's residence they found much less
25  cocaine and $25,000.  Again, the firearm, the short-barreled

1    rifle or handgun, is a surprise to us.

2            We assert that it's not true their assertion about us

3    misplacing firearms, and that there are factors that the Court

4    could craft, especially with a third-party custodian, that

5    would allow my client to be released, allow him to get back

6    involved in mental health counseling and help support his wife.

7    That's all, Your Honor.

8            THE COURT:  Thank you, Mr. Jacobs.

9            Mr. Turkelson, did you have any brief rebuttal?

10           MR. TURKELSON:  Just brief rebuttal, Your Honor.

11           In addition to the $25,000 -- in excess of 25,000

12   that was found in the residence associated with Mr. Hayes, when

13   he was arrested, he also had $9,000 in cash in his pocket.  So,

14   again, that just highlights even further that he has financial

15   resources that aren't explained by his legitimate employment.

16           And then, lastly, Your Honor, I would submit to the

17   Court that although it is good that Mr. Hayes has family

18   support and it is good that these individuals are willing to

19   potentially be third-party custodians for him, these same

20   individuals had those same relationships with Mr. Hayes at a

21   time that he committed these offenses.  So while I appreciate

22   their willingness to do that, I'm not sure how much of an

23   impact they would necessarily have on him when one considers

24   they haven't had necessarily an impact at all yet.

25           And then, lastly, although there are no failures to

```
1   appear for court, I think that those fleeing, eluding from
2   police and resisting and obstruction of police are almost akin
3   to failures to appear because they're situations in which
4   there's an expectation you comply with the orders, the lawful
5   commands of an officer, and instead he chooses to flee.  So
6   while not necessarily quite the same impact as a failure to
7   appear, I think certainly that could be a consideration of this
8   Court.
9           THE COURT:  Thank you, Mr. Turkelson.
10          MR. JACOBS:  Briefly, Your Honor?
11          THE COURT:  Of course.
12          MR. JACOBS:  The Court's aware that my client is a
13  car salesman, and the 9,000 found on his person, we assert, was
14  a recent sale of a motor vehicle. That's all.
15          THE COURT:  Very well.  Thank you, Mr. Jacobs.
16          So in looking at the factors under Section 3142(g),
17  the first is the nature and circumstances of the charged
18  offense and, of course, as we've discussed, that charge here
19  carries with it a presumption in favor of detention.
20          As to the weight of the evidence against the person,
21  that's, of course, in the Sixth Circuit anyway, the weight of
22  the evidence of dangerousness, not the weight of the evidence
23  of guilt.
24          As to the history and characteristics of the person,
25  looking at this defendant, he does have good -- good family
```

1  ties.  I understand the Government's argument that, well, the

2  family ties haven't prevented him from engaging in the conduct

3  that brings him here today, but he does -- as far as community

4  relationships are concerned, he does have many.  He's 46 years

5  old, and he's developed relationships and maintained those

6  relationships.

7          He does have a job, which is also an important thing,

8  but I would also tend to agree with the Government that his

9  monthly income would not explain the large amount of cash that

10  was found, at least in the home.  Even if the 9,000 in his --

11  on his person could be explained by car sales, it would be hard

12  to be -- hard to get to that $25,000 number when you're making

13  around 2,000 a month on car sales.

14          He does have some mental health issues in the past,

15  and -- but otherwise has pretty good physical health, and so I

16  think a lot of those factors perhaps go in his favor.  But when

17  it comes to the -- you know, the big factors as far as

18  dangerousness is concerned, and then risk of nonappearance, we

19  look a lot to someone's past behavior to try to determine what

20  their future behavior might be.

21          This defendant is involved in a very large scale

22  conspiracy as described by Government counsel, and I won't

23  repeat all of that, but certainly there is probable cause here

24  anyway to believe that there's a pretty -- a pretty large

25  network of a conspiracy that is -- involves Mr. Hayes at -- at

1  some level and perhaps at a higher level in the group.

2          He does have -- his past convictions, if I was

3  looking only at his past convictions alone, that would -- there

4  might be a possibility of crafting some conditions, as

5  Mr. Jacobs suggested, but I think when you match his past with

6  the present allegations which, again, he stands presumed

7  innocent, but there is at least probable cause to support these

8  charges.  He does have a prior felony controlled substance

9  conviction which, as noted by the Government, then may result

10  in a potential enhanced sentence for him.

11          And although he doesn't have any failures to appear,

12  he does have the fleeing a police officer and the resisting and

13  obstructing a police officer, which I would also say is akin to

14  how the -- determining how the defendant would behave as far as

15  law enforcement is concerned.  Perhaps he would be more likely

16  to appear for court than he would be to obey a police officer,

17  but that doesn't bode well for him, the fleeing and the R&O's,

18  as far as failure to appear.  However, I think if I were

19  looking only at the risk of nonappearance, again, perhaps I

20  could fashion some conditions to assure his appearance in

21  court.

22          I think the big -- the big thing for us in this case

23  is -- is the risk of danger and, as counsel mentioned, there is

24  lots of case law supporting the notion that continued drug

25  trafficking is a per se danger to the community, and that's why

1   Congress decided that these types of cases should have a

2   presumption in favor of detention.

3          And although that presumption can be rebutted, it's a

4   hard thing to do.  It's a hard thing for the defense to come

5   forward with evidence to rebut that presumption with the burden

6   ultimately remaining on the Government.  But in this case, we

7   have prior felony controlled substance offenses, prior weapons

8   convictions and a pretty lengthy description of the allegations

9   in this case, which are not fully fleshed out, of course, in

10  the complaint.

11         But in this case, it does seem pretty clear that

12  there's not only a large quantity of drug distribution going

13  on, but some of the dangers that go with that sort of activity

14  including, you know, the potential theft of drugs, which then

15  leads people to seek revenge for the theft.

16         In this case, although we don't have -- as well

17  argued by defense counsel, we do not have an indication that

18  Mr. Hayes was directly involved in any potential shooting, but

19  he was -- he was part of the discussions where -- the

20  discussion wasn't involving taking -- laying him down, the

21  person who was alleged to have stolen drugs from Mr. Delgado --

22  or Coronado, I'm sorry, Mr. Coronado was robbed.

23         So although he may not have been someone who was

24  there with his hand on the trigger, he was certainly a part of

25  the discussion that led to that notion, which led our agents to

1   the -- to the residence, and that was clearly a situation where

2   they were going to use weapons to seek revenge on someone who

3   had stolen from them.

4           In addition, we have that other discussion from

5   February where there was the 15 kilos that were taken and

6   although they were discussing exacting revenge in that

7   instance, they did not get the green light from apparently

8   their suppliers in Mexico, and so that did not happen, but

9   clearly from all of this there's a lot of discussions of

10  violence that goes just along with the dangers of drug

11  trafficking.

12          And I think in this instance where we have this

13  pretty heavy weight of evidence of drug trafficking,

14  large-scale drug trafficking, weapons convictions, weapons

15  used, weapons being found, and those weapons being at least

16  discussed about being used to exact revenge for some of the

17  dangers of drug trafficking, which is that people sometimes

18  take your -- take your drugs and you can't go to law

19  enforcement to get it -- to get them returned and so they, you

20  know, take revenge on themselves.

21          And so in this instance I find that there is no

22  condition or combination of conditions that the Court could

23  impose that would reasonably allay the danger that this

24  defendant would pose if he were to be released, and for that

25  reason Mr. Hayes will be detained pending trial.

1          Anything further for this record, Mr. Turkelson?

2          MR. TURKELSON:  Nothing from the Government, Your

3    Honor.  Thank you.

4          THE COURT:  Mr. Jacobs?

5          MR. JACOBS:  No, Your Honor.

6          THE COURT:  Thank you, sir.

7          Thank you, Your Honor.

8          (At 1:28 p.m., court recessed.)

9

10

11

12                        *  *  *  *  *

13                   C E R T I F I C A T E

14    I certify that the foregoing is a correct transcript
      from the digital sound recording of the proceedings in
15    the above-entitled matter.

16

17

18                        *Carol M. Harrison*

19    Date: 11-3-2022     Carol M. Harrison, RMR, FCRR
                          Official Court Reporter
20                        United States District Court
                          Eastern District of Michigan
21                        1000 Washington Avenue
                          Bay City, MI  48708
22

23

24

25

US v. Hayes – Detention Hearing – March 28, 2022